**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| JAVON DUSTIN MARSH, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MISSOURI DEPARTMENT OF CORRECTIONS, JULIA M. BOYER, LUCAS R. WELLS, TIMOTHY MCFARLAND, SGT. UNKNOWN RECKERT, and JOHN DOE, | ) Case No. 4:23-CV-128-RLW |
| Defendants. | ) |

**DEFENDANT RECKERT'S STATEMENT OF
UNCONTROVERTED MATERIAL FACTS**

1.    Plaintiff Javon Marsh is an inmate currently incarcerated at Eastern Reception Diagnostic and Correctional Center (ERDCC) in Bonne Terre, Missouri. Def's Answer, Doc. 11, p. 1.

2.    For all times relevant to his claims, including February 7, 2022, Marsh was incarcerated at ERDCC. **Exhibit 1, Marsh Dep. Tr., 11:17-22**.

3.    On February 7, 2022, Defendant Robert Reckert was a MDOC Sergeant (COII) and was working at ERDCC. Plf's Complaint, Doc. 1, p. 9; Def's Answer, p. 1-2.

4.    On February 7, 2022 around 6:40 p.m., officers conducted a Corrections Emergency Response Team (CERT) cell search of Marsh's cell,

#4B-110. **Exhibit 1, Marsh Dep. Tr., 13:1-7; Exhibit 2, Conduct Violation (BATES 000073).**

5.      Officers conducting the CERT cell search found approximately 13 items of contraband in Marsh's cell. **Exhibit 1**, Marsh Dep. Tr., 13:1-14:8; **Exhibit 2**, Conduct Violation (BATES 000073).

6.      As a result of the CERT cell search, Marsh was issued a conduct violation. **Exhibit 1**, Marsh Dep. Tr., 14:13-15; **Exhibit 2**, Conduct Violation (BATES 000073).

7.      Marsh was placed on Temporary Administrative Segregation Confinement (TASC). **Exhibit 1**, Marsh Dep. Tr., 20:25-21:17.

8.      Marsh was told he would be moved to Housing Unit Two. **Exhibit 1**, Marsh Dep. Tr., 21:11-20.

9.      At the time, Housing Unit 2 was the administrative segregation unit. **Exhibit 1**, Marsh Dep. Tr., 24:7-9.

10.     The walk from Housing Unit 4 to Housing Unit 2 was "at least a couple minutes" long. **Exhibit 1**, Marsh Dep. Tr., 35:2-4.

11.     While the CERT cell search was completed, Sgt. Reckert began escorting Marsh to Housing Unit 2. **Exhibit 1**, Marsh Dep. Tr., 86:1-4; **Exhibit 3**, Use of Force Summary (BATES 000033).

12.     Marsh admitted the items were found in his cell, but believed they were merely trash. **Exhibit 1**, Marsh Dep. Tr., 18:18-19:15; **Exhibit 2**, Conduct Violation (BATES 000073).

13.     Marsh was upset about the conduct violation and believed it was unfair.  **Exhibit 1**, Marsh Dep. Tr., 33:10-21, 80:20-81:13.

14.     Marsh was feeling tense and angry as the escort from Housing Unit Four to Housing Unit Two began. **Exhibit 1**, Marsh Dep. Tr., 35:2-10.

15.     Being assigned to the segregation unit causes Marsh to act hostile. **Exhibit 1**, Marsh Dep. Tr., 141:8-10.

16.     Marsh was also grieving the death of his brothers at this time. **Exhibit 1**, Marsh Dep. Tr., 81:14-82:8.

17.     Marsh was visibly upset at this time. **Exhibit 1**, Marsh Dep. Tr., 82:9-11.

18.     During the restrained escort, Marsh and Reckert passed by Captain Howe. **Exhibit 1**, Marsh Dep. Tr., 29:24-30:22.

19.     Marsh then attempted to speak to Captain Howe. **Exhibit 1**, Marsh Dep. Tr., 77:2-78:3.

20.     Officers reasonably could have interpreted Marsh's attempt to talk to Captain Howe as resisting the restrained escort. **Exhibit 1**, Marsh Dep. Tr., 77:2-78:3.

21.     During the restrained escort, Marsh became noncompliant and attempted to pull away. **Exhibit 3**, Use of Force Summary (BATES 000033); **Exhibit 1**, Marsh Dep. Tr., 86:5-7  (Marsh agreeing with the Use of Force Summary); **Exhibit 5**, Thompson Report (BATES 000035-36); **Exhibit 1**, Marsh Dep. Tr., 87:13-89:6 (Marsh agreeing with the Thompson report); **Exhibit 6**, Wells Report (BATES 00041-42); **Exhibit 1**, Marsh Dep. Tr., 90:5-21 (Marsh agreeing with the Wells report); **Exhibit 4**, Requests for Admission, ¶2 (deemed admitted).

22.     Officers gave Marsh multiple verbal directives to stop trying to pull away, but Marsh continued being noncompliant. **Exhibit 5**, Thompson Report (BATES 000035-36); **Exhibit 1**, Marsh Dep. Tr., 87:13-89:6 (Marsh agreeing with the Thompson report); **Exhibit 6**, Wells Report (BATES 00041-42); **Exhibit 1**, Marsh Dep. Tr., 90:5-21 (Marsh agreeing with the Wells report); **Exhibit 3**, Use of Force Summary (BATES 000033); **Exhibit 1**, Marsh Dep. Tr., 86:5-7  (Marsh agreeing with the Use of Force Summary); **Exhibit 4**, Requests for Admission, ¶3 (deemed admitted).

23.     Officers Thompson and Reckert placed Marsh on the ground in order to regain control over him. **Exhibit 5**, Thompson Report (BATES 000035-36); **Exhibit 1**, Marsh Dep. Tr., 87:13-89:6 (Marsh agreeing with the Thompson report); **Exhibit 6**, Wells Report (BATES 00041-42); **Exhibit 1**, Marsh Dep. Tr., 90:5-21 (Marsh agreeing with the Wells report); **Exhibit 3,**

Use of Force Summary (BATES 000033); **Exhibit 1**, Marsh Dep. Tr., 86:5-7 (Marsh agreeing with the Use of Force Summary); **Exhibit 4**, Requests for Admission, ¶4 (deemed admitted).

24.    Once control over Marsh appeared regained, Reckert and another officer helped Marsh to his feet. **Exhibit 5**, Thompson Report (BATES 000035-36); **Exhibit 1**, Marsh Dep. Tr., 87:13-89:6 (Marsh agreeing with the Thompson report); **Exhibit 6**, Wells Report (BATES 00041-42); **Exhibit 1**, Marsh Dep. Tr., 90:5-21 (Marsh agreeing with the Wells report); **Exhibit 3**, Use of Force Summary (BATES 000033); **Exhibit 1**, Marsh Dep. Tr., 86:5-7 (Marsh agreeing with the Use of Force Summary); **Exhibit 4**, Requests for Admission, ¶5 (deemed admitted).

25.    After Marsh was back on his feet, the escort toward Housing Unit 2 continued. **Exhibit 5, Thompson Report (BATES 000035-36); Exhibit 1, Marsh Dep. Tr., 87:13-89:6** (Marsh agreeing with the Thompson report); **Exhibit 6, Wells Report (BATES 00041-42); Exhibit 1, Marsh Dep. Tr., 90:5-21** (Marsh agreeing with the Wells report); **Exhibit 3, Use of Force Summary (BATES 000033); Exhibit 1, Marsh Dep. Tr., 86:5-7** (Marsh agreeing with the Use of Force Summary).

26.    Marsh recalls walking roughly 20 to 30 feet after being assisted to his feet. **Exhibit 1, Marsh Dep. Tr., 55:2-10.**

27.    Marsh again was noncompliant and attempted to pull away during the escort. **Exhibit 5**, Thompson Report (BATES 000035-36); **Exhibit 1**, Marsh Dep. Tr., 87:13-89:6 (Marsh agreeing with the Thompson report); **Exhibit 6**, Wells Report (BATES 00041-42); **Exhibit 1**, Marsh Dep. Tr., 90:5-21 (Marsh agreeing with the Wells report); **Exhibit 3**, Use of Force Summary (BATES 000033); **Exhibit 1**, Marsh Dep. Tr., 86:5-7  (Marsh agreeing with the Use of Force Summary); **Exhibit 4**, Requests for Admission, ¶6 (deemed admitted).

28.    Marsh recalls Officer Thompson saying to him, "don't grab my hand." **Exhibit 1**, Marsh Dep. Tr., 55:11-16.

29.    Marsh recalls officers Thompson and Reckert telling him to comply with orders. Specifically, Marsh recalls "I was not—they say I was not walking." **Exhibit 1**, Marsh Dep. Tr., 66:2-24.

30.    Several officers, including Reckert, placed Marsh on the ground a second time in order to regain control over him. **Exhibit 5**, Thompson Report (BATES 000035-36); **Exhibit 1**, Marsh Dep. Tr., 87:13-89:6 (Marsh agreeing with the Thompson report); **Exhibit 6**, Wells Report (BATES 00041-42); **Exhibit 1**, Marsh Dep. Tr., 90:5-21 (Marsh agreeing with the Wells report); **Exhibit 3**, Use of Force Summary (BATES 000033); **Exhibit 1**, Marsh Dep. Tr., 86:5-7  (Marsh agreeing with the Use of Force Summary).

31.     Marsh was placed on the ground in an area where there was snow. Plf's Compl., Doc. 1, ¶17; **Exhibit 1**, Marsh Dep. Tr., 66:2-24.

32.     Marsh alleges that another officer—not Reckert—pulled his hair and "shoved" his face in the dirt. **Exhibit 1**, Marsh Dep. Tr., 48:2-17.

33.     Another officer—not Reckert—issued pepper spray on Marsh after he was placed on the ground for the second time. **Exhibit 5**, Thompson Report (BATES 000035-36); **Exhibit 1**, Marsh Dep. Tr., 87:13-89:6 (Marsh agreeing with the Thompson report); **Exhibit 6**, Wells Report (BATES 00041-42); **Exhibit 1**, Marsh Dep. Tr., 90:5-21 (Marsh agreeing with the Wells report); **Exhibit 3**, Use of Force Summary (BATES 000033); **Exhibit 1**, Marsh Dep. Tr., 86:5-7  (Marsh agreeing with the Use of Force Summary); **Exhibit 4**, Request for Admission, ¶7 (deemed admitted).

34.     After control was regained, officers assisted Marsh to his feet again, and escorted him to Housing Unit 2. **Exhibit 5**, Thompson Report (BATES 000035-36); **Exhibit 1**, Marsh Dep. Tr., 87:13-89:6 (Marsh agreeing with the Thompson report); **Exhibit 6**, Wells Report (BATES 00041-42); **Exhibit 1**, Marsh Dep. Tr., 90:5-21 (Marsh agreeing with the Wells report); **Exhibit 3**, Use of Force Summary (BATES 000033); **Exhibit 1**, Marsh Dep. Tr., 86:5-7  (Marsh agreeing with the Use of Force Summary).

35.  The Warden determined that the force employed was minimally necessary to control the incident and maintain good order and security. **Exhibit 7**, Warden's Memo (BATES 000031).

36.  Marsh has trouble remembering in detail what happened on February 7, 2022. **Exhibit 1**, Marsh Dep. Tr., 54:14-16, 64:12-18, 85:12-17, 94:15-16.

37.  Marsh admits that he struggles with respecting authority figures. **Exhibit 1**, Marsh Dep. Tr., 136:1-138:13.

38.  Marsh believes all of the officers at ERDCC are out to get him. **Exhibit 1**, Marsh Dep. Tr., 138:14-139:2.

39.  Marsh asserts the following injuries in his Complaint: left shoulder abrasions, left knee bruising and abrasions, cuts and bruises on left side of face, scarring on left foot, and hair pulled from scalp. Plf's Compl., Doc. 1, ¶21.

40.  Marsh attributes the following injuries to Reckert's use of force: "My left shoulder, left knee, left wrist." **Exhibit 1**, Marsh Dep. Tr., 112:11-17.

41.  Marsh did not allege any wrist injuries in his Complaint. Plf's Compl., Doc. 1, ¶21; **Exhibit 1**, Marsh Dep. Tr., 112:11-12.

42.  Shortly after the use of force on February 7, 2022, Marsh was assessed by medical staff. **Exhibit 1**, Marsh Dep. Tr., 100:5-7.

43.  At the appointment, Marsh reported abrasions on his left shoulder, left knee, and both wrists. **Exhibit 1**, Marsh Dep. Tr., 102:7-10.

44.    Marsh was hostile and angry during this February 7, 2022 appointment, which Marsh admits was evidenced by his physical demeanor. **Exhibit 1**, Marsh Dep. Tr., 104:2-25.

45.    Marsh believes he was in distress during this medical assessment due to the recent death of his brothers. **Exhibit 1**, Marsh Dep. Tr., 107:9-20.

46.    Marsh attended another wellness check the following morning, February 8, 2022. **Exhibit 1**, Marsh Dep. Tr., 108:18-20.

47.    The nurse at this wellness appointment was unable to apply antibiotic ointment and dressing to Marsh's abrasions because he was agitated. **Exhibit 1**, Marsh Dep. Tr., 110:11-16.

48.    Marsh also asserts "physical pain and injuries" in his complaint. Plf's Compl., Doc. 1, ¶12.

49.    Marsh suffered from chronic pain in his ankles and shoulders prior to the February 7, 2022 use of force. **Exhibit 1**, Marsh Dep. Tr., 123:17-124:9.

50.    Marsh claims that he submitted an IRR about the February 7, 2022 use of force to an Officer McFarland, whom then failed to file the IRR. **Exhibit 1**, Marsh Dep. Tr., 126:7-24, 128:3-11.

51.    The grievance materials attached to Marsh's complaint are not about the use of force on February 7, 2022. **Exhibit 1**, Marsh Dep. Tr., 125:7-19, 126:7-14, 129:15-130:3; Plf's Exhibit, Doc. 1-3.

52.     Marsh does not have a copy of the IRR pertaining to the February 7, 2022 use of force which he allegedly submitted to an Officer McFarland. **Exhibit 1**, Marsh Dep. Tr., 125:16-25, 128:3-4.

53.     Marsh's grievance appeal regarding McFarland's alleged failure to file Marsh's IRR was denied, because there was no evidence to verify his allegation. Plf's Exhibit, Doc. 1-3, p. 5.

Respectfully submitted,

**ANDREW BAILEY**
Attorney General

*/s/Madeline E. Hills*
Madeline E. Hills, Mo Bar #76029
Assistant Attorney General
Missouri Attorney General's Office
P.O. Box 899
Jefferson City, Missouri 65102
Phone:  (573) 751-0165
E-mail: Madeline.Hills@ago.mo.gov
*Attorney for Defendant Reckert*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of March, 2024, I electronically filed the foregoing with the Court's electronic filing system and mailed (via U.S. mail) a true and correct copy of the same to:

Javon Dustin Marsh, #1191236
Eastern Reception Diagnostic and Correctional Center
2727 Highway K
Bonne Terre, MO 63628
*Pro Se Plaintiff*

/s/*Madeline E. Hills*
Madeline E. Hills
Assistant Attorney General